Filed 10/6/14  P. v. Jones CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C073559 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF124251) |
| v. | |
| THOMAS JONES IV, | |
| Defendant and Appellant. | |

A jury found defendant Thomas Jones IV guilty of second degree robbery (Pen. Code, § 211),[1] elder abuse (§ 368, subd. (c)(1)), and three counts of unlawfully using tear gas (§ 22810, subd. (g)).  After defendant admitted serving three prior prison terms, the trial court sentenced him to an aggregate term of eight years eight months in state prison.

On appeal, defendant contends it was error to convict him on three counts of unlawfully using tear gas because, although three people were injured by the tear gas, he

_____

[1]  Undesignated statutory references are to the Penal Code.

1

only "used" the tear gas once.  Defendant also contends the prosecution committed misconduct in its closing argument.  We conclude two of defendant's convictions for unlawful use of tear gas should be stricken, but defendant has forfeited his claim of prosecutorial misconduct.  We shall modify the judgment accordingly.

## I.

## BACKGROUND

On October 27, 2012, 76-year-old Margaret Ray parked in front of a shopping center and got out of her van, holding her keys and her cane in her right hand and her purse over her left shoulder.  Defendant rode up to Ray on his bicycle and grabbed the strap of her purse.  Defendant yanked on Ray's purse and the strap slipped down her left arm to her hand; he yanked again and pulled the purse free.  Defendant then "hopped his bike up on a [curb]" and rode away.

As defendant turned the corner of the building, Ray yelled for help.  Three men (Douglas Foster, Andrew Wing, and Shawn McMahon) came out of a nearby "Liberty Safe" store and chased defendant; Ray called 911.  Foster saw defendant on his bike but did not see defendant's face; he ran after defendant.  Wing ran out the back of the store, where he caught up with Foster; they continued to chase defendant together.  McMahon did not want to leave the store unattended and open so he stayed behind to lock the doors. He then ran after Foster and Wing.

At some point, defendant ended up at the bottom of a loading bay beside his bike. When they got to the loading bay, Wing and Foster saw defendant going through his backpack.  Foster did not see a purse, Wing saw defendant put a purse inside his backpack, and another person who was there thought he saw defendant had a gun. Defendant then pulled out a "canister."  McMahon had by then gotten to the loading bay, but from a different location than did Foster and Wing.

Defendant started to ride his bike out of the loading bay, riding toward Wing and Foster.  McMahon asked Foster and Wing if this was the guy who stole Ray's purse; they

2

said he was. So McMahon dove toward defendant, who was still on his bike. Defendant asked McMahon, "Do you want some of this?" and sprayed McMahon with pepper spray. Defendant then rode away on his bike, dropping the canister on the ground. Foster and Wing ran to help McMahon, and they too felt the effects of the pepper spray.

Defendant was later arrested and charged with second degree robbery (§§ 211 & 212.5, subd. (c)), abusing or endangering the health of an elderly person under circumstances likely to produce great bodily injury or death (§ 368, subd. (b)(1)), three counts of unlawfully using tear gas (§ 22810, subd. (g)), and one count of falsely identifying himself to a police officer (§ 148.9, subd. (a)). The People also alleged defendant served three prior prison terms within the meaning of section 667.5, subdivision (b).

In closing arguments, the prosecution attempted to illustrate the beyond-a-reasonable-doubt standard of proof by revealing in bits and pieces a well-known painting: "Another way of looking at it is enough is enough. Here we have a slide, there's a painting there, it's covered partially by a blue shield. Some of you may right now recognize what that is. Some of you might not. You clearly can't see the whole thing. Maybe some of you will decide you have an abiding conviction that you know what it is when you saw the crossed hands. Maybe some of you will decide you have an abiding conviction when you see the shoulders. Maybe some of you will not decide that you have an abiding conviction until you see the famous smile. But it's going to be different for everybody."

A jury later found defendant guilty of the lesser included offense of abusing or endangering the health of an elder under circumstances not likely to result in great bodily injury (§ 368, subd. (c)(1)), and guilty on all other charges. Following his conviction, the trial court sentenced defendant to an aggregate term of eight years eight months in state prison. The trial court awarded defendant 161 days of custody credit and ordered him to pay various fines and fees. Defendant appeals.

3

## II.

## DISCUSSION

### A. Multiple Convictions for Use of Tear Gas

Defendant contends two of his three convictions for the unlawful use of tear gas must be stricken because under the plain language of the statute, the use of tear gas "is not punishable per person injured by the spray but rather per incident," and while he injured three people, he only "used" the spray once. The People agree and we find their analysis persuasive.

Section 22810, subdivision (g)(1) provides in relevant part that "[e]xcept as provided in paragraph (2), any person who *uses* tear gas or any tear gas weapon except in self-defense is guilty of a public offense . . . ." (Italics added.) We agree with the People's interpretation of the statutory language that the "gravamen of the offense" appears to be the "use" of the tear gas itself, not the number of people harmed. Thus, like the brandishing of a weapon (§ 417, subd. (a)(1)), the use of pepper spray is not a crime upon the person but a crime committed in someone's presence. (See *In re Peter F.* (2005) 132 Cal.App.4th 877, 878-879 [brandishing a deadly weapon in the presence of another is not an act of violence upon that person but an act committed in the person's presence].) As such, a single act of using tear gas can only support a single conviction, no matter how many people were injured. (*Ibid.*)

It is undisputed that defendant here only "used" the pepper spray once, when he sprayed it at McMahon. Then he dropped the canister and fled the scene. We conclude that under the plain language of the statute, that single unlawful use of tear gas, which resulted in injuring three people, can give rise to only a single conviction for unlawfully using tear gas.

### B. Prosecutorial Misconduct

Defendant contends the prosecutor committed misconduct in closing argument by revealing a picture of an iconic image in isolated pieces in order to illustrate the

4

reasonable doubt standard of proof, thus, defendant argues, effectively "diluting" the prosecution's burden of proof.

In seeking a criminal conviction, the prosecution is prohibited from engaging in " ' " 'a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.]' " (*People v. Hill* (1998) 17 Cal.4th 800, 819, quoting *People v. Gionis* (1995) 9 Cal.4th 1196, 1214.) Nonetheless, " '[c]onduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 . . . .)" (*People v. Navarette* (2003) 30 Cal.4th 458, 506.)  However, "[a] defendant's conviction will not be reversed for prosecutorial misconduct . . . unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1133 . . . .)  Also, a claim of prosecutorial misconduct is not preserved for appeal if defendant fails to object and seek an admonition if an objection and jury admonition would have cured the injury.  (*People v. Scott* (1997) 15 Cal.4th 1188, 1217 [(*Scott*)].)" (*People v. Crew* (2003) 31 Cal.4th 822, 839 (*Crew*).)

Here, defendant did not object on any ground to the portion of the prosecutor's closing argument regarding the standard of proof or assert a prosecutorial misconduct claim.  On appeal, defendant makes no argument that an admonition would not have cured any harm caused by the purported misconduct.  Consequently, defendant failed to preserve the issue of prosecutorial misconduct in misdescribing the requirement of proof beyond a reasonable doubt.  (*Crew*, *supra*, 31 Cal.4th at p. 839; *Scott*, *supra*, 15 Cal.4th at p. 1217.)

## C. Ineffective Assistance of Counsel

Anticipating that his claim of prosecutorial misconduct would be deemed forfeited by the failure to object at trial, defendant also contends his trial counsel was ineffective for failing to object. We disagree.

"To demonstrate ineffective assistance of counsel, a defendant must show that counsel's action was, objectively considered, both deficient under prevailing professional norms and prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674].) To establish prejudice, a defendant must show a reasonable probability that, but for counsel's failings, the result of the proceeding would have been more favorable to the defendant. (*Id.* at p. 694 . . . .)" (*People v. Burgener* (2003) 29 Cal.4th 833, 880.) Moreover, " ' "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." [Citation.]' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

Here, defendant has failed to establish he was prejudiced by counsel's failure to object during the prosecutor's illustration of the burden of proof. Whether the prosecutor misstated or diluted the burden of proof in closing argument, the trial court admonished the jury that the arguments of counsel on the burden of proof did not state the law and that the jury was required to follow the instructions given by the court. "When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for '[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' [Citation.]" (*People v. Osband* (1996) 13 Cal.4th 622, 717.)

The trial court also correctly instructed the jury with CALCRIM No. 220 on the definition of proof to prove beyond a reasonable doubt. On appeal, "[w]e assume the jury abided by the court's admonitions and instructions, and thereby avoided any

prejudice." (*People v. Stitely* (2005) 35 Cal.4th 514, 559.)  Thus, on this record, we find no prejudice.  (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1268-1269.)

## III.

## DISPOSITION

Defendant's convictions for the unlawful use of tear gas in counts three and five are hereby stricken.  The judgment is otherwise affirmed.  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


       RAYE       , P. J.


We concur:


     BLEASE   , J.


     DUARTE   , J.

7